**A. G. McDOUGALD, Jr., Plaintiff,**

v.

**LOCAL REVIEW COMMITTEE, Composed of Paul L. Sutton, Bobby (H. L.) Jordan, and E. L. White, Defendant.**

Civ. No. 722.

United States District Court
E. D. North Carolina,
Wilmington Division.

Feb. 12, 1957.

Carter & Murchison, Wilmington, N. C., for petitioner.

Julian T. Gaskill, U. S. Atty., Raleigh, N. C., for respondent.

GILLIAM, District Judge.

A. G. McDougald, Jr., the complainant before me, is a farmer in Bladen County, North Carolina, within this District. McDougald contacted the County Committee, empowered by the Secretary of Agriculture to determine crop allotments and made personal inquiry as to the steps necessary to procure a peanut allotment for his farm. He sent a letter to the County Committee on December 7, 1955, asking for a review of all his allotments, including one for peanuts. He submitted affidavits setting out the history of the farm. He met with the County Committee and discussed the situation concerning a peanut allotment. By his attorney, he submitted a second letter on March 21, 1956. This letter referred to the first one, of December 7, 1955. Like the first, it renewed McDougald's request for a hearing and review of his status as a peanut grower.

The County Committee had taken no action to grant or to deny the complain-

ant's request for designation as a peanut grower. It had neither established his allotment at zero acres nor at any other figure when on April 16, 1956, he applied for a review hearing before the defendant, Local Review Committee.

Such a hearing was granted on May 15, 1956. At that hearing his claim for relief was stated as follows: "(1) Denial of any farm acreage allotment and marketing quota for the 1956 crop of peanuts based on circumstances beyond owner's control. Denial was erroneously based on (a) failure of owner to plant the allotment and quota of five (5) acres of peanuts in 1945 when he was prevented from doing so by military service and (b) failure to plant peanuts in subsequent years for which years the allotment and quota was not restored although owner sought each year to have same restored. The allotment and quota for 1945 and prior years was five (5) acres. (2) That the allotment and quota for 1956 should be at least five (5) acres based on the history of this farm and its size on its comparison with other similar farms."

The County Committee gave the following reply to the Review Committee. "Answer on the Bladen County A. S. C. Committee in connection with 1956 Peanut allotment Farm No. 55–009 3267. A peanut allotment for an 'Old Farm' was not established due to the fact that no peanuts were picked or threshed during the past three years, namely 1953, 1954, or 1955. A New Farm Peanut Allotment was not established for 1956 because an application for a New Farm Peanut Allotment was not filed with the County A. S. C. Committee prior to February 15, 1956."

The Review Committee conducted a hearing on the issues raised by these conflicting contentions and made the following findings, conclusions, and determination on the matter.

"Findings of Fact

"There were no peanuts dug or threshed on this farm during the years 1953, 1954 or 1955. The operator did not file a 1956 New Peanut Farm Allotment application on the prescribed form, prior to the closing date February 15, 1956. The operator did write a letter to the County A. S. C. Office on December 7, 1955, indicating that he was dissatisfied with his acreage allotments. This farm had a five-acre peanut allotment in 1945 which was cancelled because of non-use while the operator was in military service. The operator testified that he had tried at various times subsequent to his release from military service but had been unable to get the farm allotment restored.

"Conclusions

"This is not an 'Old Farm' under the 1956 Peanut Regulations. The filing of a written request for further consideration on December 7, 1955, should be considered timely filing of an application for a 'New Farm' allotment.

"It appears that the re-instatement of this farm's peanut acreage allotment should have been accomplished subsequent to the return of the operator from military service, if correct information and proper attention had been given this case.

"Determination

"The 1956 Peanut Acreage Allotment for this farm should be 5.0 acres."

On June 26, following the May 15 hearing, the Review Committee mailed McDougald a "Notice of Reopening of Hearing". This reopened hearing was held on July 13. The Review Committee then made the following findings, conclusions, and determination.

"Findings of Fact

"1. This hearing was reopened by the Review Committee on its own motion because of the discovery that the record of the proceedings before the Committee on May 15, 1956 did not contain the original mailed notice of the quota being reviewed or a certified copy thereof.

"2. No notice of farm marketing quota was mailed to applicant.

"Conclusions

"1. The Review Committee, under the Marketing Quota Review Regulations, can review only quotas which have been established for farms by a County Committee or in connection with which the County Committee has made a determination that no quota has been established. In each case evidence of the County Committee's action must be evidenced by a notice mailed to the operator of the farm.

"2. The Review Committee hereby revokes and declares void its determination of May 15, 1956, because of its lack of authority to consider the application.

"Determination

"This Committee had no authority under existing law and applicable regulations to consider this application and its determination is null and void."

McDougald appeals to this Court from the Review Committee's foregoing decision that followed the rehearing and which, in effect, cancelled his five-acre allotment set by the same Committee at the first hearing. Review by this Court of a Review Committee's decision is provided and limited by Title 7 U. S.C.A. §§ 1365 and 1366. The review afforded by these sections is expressly limited to questions of law.

The Review Committee, in response to the complainant's appeal, now moves for summary judgment dismissing the action "on the ground that the Court lacks jurisdiction of the same because a 1956 peanut allotment has not been established for the plaintiff's farm, and the review by this Court and by the defendant, Local Review Committee, is dependent upon such an allotment having been established." The motion is accompanied by affidavits by the members of the County Committee averring that no quota was established because no proper applications were filed by McDougald.

McDougald made at the rehearing, and renews before this Court, a twofold objection to the Review Committee's reopening the hearing. First, the reopening was had on the Review Committee's own motion. Section 711.29 of Marketing Quota Review Regulations provides in part that: "The review committee (a) on its own motion, or upon due application therefor, may, within fifteen days from the date of mailing to the applicant of a copy of the determination of the review committee, reopen the hearing for the purpose of taking additional evidence or of adding any relevant matter or document." Notice of the rehearing was mailed to McDougald forty-two days after the original determination was mailed to him. The re-hearing was fifty-nine days afterwards. Clearly the Review Committee draws no authority to reopen hearings under these circumstances from the regulation which it purports to rely on. Second, assuming that the rehearing had been held pursuant to the regulation, did not the Secretary of Agriculture exceed his authority derived from Title 7 U.S.C.A. § 1375(b), in view of the circumstance that Title 7 U.S.C.A. §§ 1361–1368, which the regulations are designed to effectuate, contain no provision for appeal or review at the instance of a committee or the Secretary, but only a "dissatisfied farmer"?

An answer to this question is unnecessary to the decision of this case. However, agreement with the complainant's first objection raises a further question. Does the Review Committee have the inherent power, independent of explicit regulations, to reopen a hearing for the purpose of setting aside a prior determination on the ground that the Review Committee lacked jurisdiction to make the prior determination?

In reaching an answer to this question it should be noted that a rehearing, as provided by Section 711.29 of the review regulations set out above, is for the purpose "of taking additional evidence or of adding any relevant matter or document". The rehearing in McDougald's case gave rise to a lengthy transcript, but it consists largely of discussion by counsel, committeemen,

and agents of the Department of Agriculture. Little or nothing in the way of "evidence" is to be found in it, nor was any needed to sustain the action taken by the Review Committee; for while a rehearing under Section 711.29 would have as its objective the affirmation or reversal on the merits of a prior holding because of new evidence, the Review Committee in McDougald's case merely took note of what it considered to be a fatal omission in the record produced at the first hearing.

If the omission of an allotment notice has the effect which the Review Committee attributed to it, that Committee's first decision allowing McDougald a five-acre allotment was not merely voidable, but void. Recognition of its nullity by the Review Committee or anyone else at any time would not deprive McDougald of any right.

Was the Review Committee's first determination a nullity because of the lack of any action by the County Committee which could be reviewed? Title 7 U.S. C.A. § 1363, provides as follows: "Any farmer who is dissatisfied with his farm marketing quota may, within fifteen days after mailing to him of notice as provided in section 1362 of this title, have such quota reviewed by a local review committee composed of three farmers from the same or nearby counties appointed by the Secretary. Such committee shall not include any member of the local committee which determined the farm acreage allotment, the normal yield, or the farm marketing quota for such farm. Unless application for review is made within such period, the original determination of the farm marketing quota shall be final."

Likewise, Section 711.8 of the Marketing Quota Review Regulations specifies that the original mailed notice of the quota sought to be reviewed, or a certified copy, be included with the application for review. If the omission had merely been failure to include the notice of a quota that had actually been determined by the County Committee, I would agree with McDougald that such neglect would only be an excusable breach of a technical rule. Indeed Section 711.9 of the regulations, referred to above, provides a remedy for such flaws in administrative pleadings.

However, the manifest intent of Congress was to provide two distinct levels at which a farmer's quotas might receive administrative consideration, not parallel courses to be followed at the farmer's option. The requirement that a farmer secure a determination at the ground level before he is eligible to have his case heard on an administrative appeal is not unreasonable. It is analogous to the familiar rule stated in hosts of cases that one may not have judicial review until administrative remedies are exhausted.

The complainant further argues that the County Committee's failure to take any action on his December 7 letter, which the Review Committee deemed to be a sufficient though irregular application, was tantamount to a determination that his allotment would be zero acres. However, the remedy for a County Committee's refusal to take any positive action from which an appeal would properly lie is an order in the nature of a writ of mandamus.

I conclude that the determination of a quota by the County Committee is absolutely essential for exercise of the Review Committee's jurisdiction under the authority granted by Congress.

Since there is no valid determination for this Court to review, it follows that the defendant Review Committee's motion for summary judgment dismissing the action must be granted, and it is so ordered.